Case: 25-1734  Document: 00118358453  Page: 1  Date Filed: 10/22/2025  Entry ID: 6759760833

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

Case No.
25-1734

_____

Amro Farid

Plaintiff – Appellant,
v.

Trustees of Dartmouth College

Defendant - Appellee

_____

On Appeal From A Judgment and Order of the District Court for
the District of New Hampshire

_____

**BRIEF OF THE PLAINTIFF/APPELLANT, AMRO FARID**
_____

October 22, 2025                PLAINTIFF-APPELLANT AMRO FARID
                                Joseph L. Sulman, BBO #115200
                                Law Office of Joseph L. Sulman, Esq.
                                255 Bear Hill Road, Suite 204
                                Waltham, MA 02451
                                (617) 521-8600
                                jsulman@sulmanlaw.com

1

# Table of Contents

*Table of Authorities*........................................... *3*

*Jurisdictional Statement*....................................... *5*

*Statement of The Issues Presented for Review*.................. *5*

*Concise Statement of The Case*................................ *6*

  A. Factual Background .......................................... 6

  Summary of the Argument....................................... 20

*Argument*..................................................... *22*

  I. STANDARD OF REVIEW .......................................... 22

  II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT ON COUNTS III AND IV UNDER TITLE VII AND RSA 354-A:7..... 23
    A. The Record Contains Sufficient Evidence for A Reasonable Jury To Find That Dartmouth Retaliated Against Farid for Filing The Title VII and RSA 354-:7 Complaint Through The Research Misconduct Investigation......... 23
    B. The District Court Failed To Consider Farid's Evidence in Assessing The Retaliation Claims Under Counts III and IV........................ 33

  III. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DARTMOUTH ON COUNTS I AND II OF THE COMPLAINT. ..................................................... 36
    A. Farid Submitted Sufficient Comparator Evidence..................... 37
    B. The Record Contains Sufficient Evidence To Permit A Jury to Find Disparate Treatment Under Counts I and II............................. 39
    C. The District Court Applied An Incorrect Formulaic Standard in Granting Summary Judgment on Counts I and II.......................... 44

  IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN COMPELLING FARID TO PRODUCE METADATA IN GRANTING DEFENDANTS' MOTION TO COMPEL......... 47

  Addendum .................................................................... Add.1

## Table of Authorities

**Cases**

*Ahern v. Shinseki*, 629 F.3d 49, 55 (1st Cir. 2010)............ 27

*Beauchesne v. Aging Excellence, Inc*., 2025 U.S. Dist. LEXIS 194176, *22 (Sept. 30, 2025) ................................ 24

*Bonner v. Triple S Mgmt. Corp*., 68 F.4th 677, 684 (1st Cir. 2023) ................................................... 49, 51

*Brandt v. Fitzpatrick*, 957 F.3d 67, 74 (1st Cir. 2020)........ 24

*Calero-Cerezo v. United States DOJ*, 355 F.3d 6, 26 (1st Cir. 2004) ..................................................... 26

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)............ 26

*Cook v. CTC Communs. Corp.*, 2007 U.S. Dist. LEXIS 96979, at *22 (D.N.H. Oct. 30. 2007) ......................................... 32

*CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 849 (1st Cir. 1985).. 34

*Dennis v. Osram Sylvania, Inc*., 549 F.3d 851, 859 (1st Cir. 2008) ..................................................... 24

*Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 509 (1st Cir. 2022) ................................................ 27, 39, 40

*Fournier v. Massachusetts*, No. 20-2134, 2021 U.S. App. LEXIS 27676, at *7 (1st Cir. Sep. 15, 2021) ................... 25, 27

*GGNSC Admin. Servs., LLC v. Schrader*, 917 F.3d 20, 23 n.3 (1st Cir. 2019) ................................................. 26

*Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 412 (1st Cir. 2015) ................................................. 26

*Hatcher v. Bd. of Trs. of S. Illinois Univ.*, 829 F.3d 531, 540 (7th Cir. 2016) ................................................. 40

*Ing v. Tufts Univ*., 81 F.4th 77, 83 (1st Cir. 2023)....... 44, 45

*Kim v. Bd. of Trs. of the Ala. Agric. & Mech. Univ.*, 2014 U.S. Dist. LEXIS 134321, at *32 (N.D. Ala. Sep. 24, 2014) ....... 41

*Lestage v. Coloplast Corp*., 982 F.3d 37, 47 (1st Cir. 2020)... 28

*Mercado v. Hyannis Air Serv*., No. 23-1744, 2025 U.S. App. LEXIS 24455, at *8 (1st Cir. Sep. 22, 2025) .................. passim

*P.R. Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 133 (1st Cir. 2010) ................................................. 36

*Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC,* No. 23-734, 2025 U.S. Dist. LEXIS 133319, at *16 (E.D. Pa. June 20, 2025) 51

*Piretti v. Hyman*, No. 79-622-K, 1979 U.S. Dist. LEXIS 15386, at *11 (D. Mass. July 23, 1979) ................................ 33

*Ray v. Ropes & Gray LLP*, 799 F.3d 99, 107 (1st Cir. 2015)..... 25

*Rezaii v. Kennedy*, No. 1:24-cv-10838-JEK, 2025 U.S. Dist. LEXIS 44346, at *6 n.2 (D. Mass. Feb. 24, 2025) ................... 44

*Ripoli v. R.I. Dep't of Hum. Servs*., 123 F.4th 565, 571 (1st Cir. 2024) ............................................ 38, 39, 40, 43

*Rodríguez-Cardi v. MMM Holdings, Inc*., 936 F.3d 40, 50 (1st Cir. 2019) ................................................. 31

*Rolfs v. Home Depot U.S.A., Inc.,* 971 F. Supp. 2d 197, 208 (D.N.H. 2013) ................................................. 24

3

*Siam v. Potter*, No. C04-0129MHP, 2005 U.S. Dist. LEXIS 11893, at *39 (N.D. Cal. May 16, 2005) ................................ 48

*Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R. v. NLRB*, 414 F.3d 158, 163 (1st Cir. 2005) ..................... 32

*Sony BMG Music Entm't v. Tenenbaum,* 672 F. Supp. 2d 217, 221 (D. Mass. 2009) ................................................... 48

*Stratton v. Bentley Univ.*, 113 F.4th 25, 44 (1st Cir. 2024)... 27

*Theidon v. Harvard Univ.,* 948 F.3d 477, 499 (1st Cir. 2020).. 44, 45

*Thomas v. Sheriff of Jefferson Cnty.*, No. 22-13875, 2023 U.S. App. LEXIS 26637, at *16 (11th Cir. Oct. 6, 2023) ........... 48

*United* States v. Corey, 207 F.3d 84, 92 n.14 (1st Cir. 2000).. 31

*Vernet v. Serrano-Torres*, No. 00-2559(DRD), 2012 U.S. Dist. LEXIS 202023, at *4 (D.P.R. May 29, 2012) ................... 36

*Vichio v. United States Foods, Inc.,* 88 F.4th 687, 691 (7th Cir. 2023) ................................................... 47

*Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1991) ................................................... 45

**Statutes**

28 U.S.C. § 1291.............................................. 6
28 U.S.C. § 1331.............................................. 6
42 U.S.C. § 1983.............................................. 6

**Other Authorities**

Black's Law Dictionary....................................... 35
Bluebook Rule 4.1 (22nd) ..................................... 35
EURO J Transp Logist (2012) *at https://www.sciencedirect.com/science/article/pii/S21924376206000127.* ............................................. 10
https://www.nsf.gov/funding/opportunities/career-faculty-early-career-development-program/nsf22-586/solicitation#elig ...... 44

**Jurisdictional Statement**

The district court had federal question jurisdiction under 28 U.S.C. § 1331 as one of the claims raised a violation of 42 U.S.C. § 2000e. Final judgment was entered by the district court on July 2, 2025. A notice of appeal was timely filed on July 31, 2025.[1] This court has appellate jurisdiction under 28 U.S.C. § 1291.

**Statement of The Issues Presented for Review**

1.    Whether the district court erred in granting summary judgment to Defendant/Appellee Trustees of Dartmouth College ("Dartmouth") on the claims of retaliation under Title VII and RSA 354-A:7 under Counts III and IV of the Complaint, where the record contained evidence sufficient for a jury to find Dartmouth retaliated against Farid for filing his Complaint of discrimination by initiating a research misconduct investigation or administering a biased investigation?

2.    Whether the district court erred in granting summary judgment to Dartmouth on the claims of retaliation under Title VII and RSA 354-A:7 under Counts III and IV of the Complaint, where it failed to consider evidence submitted by Farid cited in

---

[1] The Notice of Appeal was timely filed on July 31, 2025. App. 17. The Notice was re-filed on August 1 per request of the District Court clerk because it was filed under the incorrect category on the ECF system.

5

the Statement of Facts of the Objection to Summary Judgment because it was not specifically cited in the Argument section of his Objection?

3.    Whether the district court erred in granting summary judgment to Dartmouth on the claims of national origin and/or religious discrimination under Title VII and RSA 354-A:7 under Counts I and II, where the record contained sufficient evidence that Dartmouth treated a similarly-situated professor outside Farid's protected class more favorably the year previously during tenure review and the overall circumstances of Farids' tenure-track provided evidence of discrimination?

4.    Whether the district court abused its discretion in partially granting Dartmouth's Motion to Compel by ordering Farid to produce the metadata for his previously-produced document production, where the Rule 26(b)(1) factors as applied to the parties' conduct show that the district court's order was plainly wrong and will result in substantial prejudice to Farid?

## Concise Statement of The Case

### A. Factual Background

#### i. Facts For Discrimination Claims.

Farid was appointed to Dartmouth as an Associate Professor, but given six years to make tenure, which is the amount of time required for Assistant Professors. App. 587. Farid is Muslim and

Arabic. *Id.* at 359. Shortly after he joined Dartmouth, he was invited to serve in a leadership position as professor-advisor for the Al-Nur Muslim Student Association Litwin. *Id.* at 586. Then-Dean Joseph Helble discouraged him from being involved in the group. *Id.* Farid knows at least one non-Muslim professor who was encouraged to engage in extracurricular activities while on the tenure track. *Id.* at 587.

Farid's expertise is in energy systems and specifically applied intelligent multi-energy engineering systems. *Id.* at 540, S. App. 37. In a series of actions, Farid requested access to campus-wide energy systems data for his research over several years but never received any assistance, and in 2019, he was removed as an advisor to a student project where he would have gained access to energy systems data. *Id.* at 622-624. By the time he applied for tenure at Dartmouth in 2020, Farid had published 145 scholarly papers. App. 588. He published 69 papers based on work at Dartmouth but none through work with Dartmouth colleagues. *Id.*; S. 37-40.

In 2020, Farid had two years remaining on his "tenure clock" when he would be *required* to submit for tenure or exit the tenure track. App. 587. In preparing for his decision on whether to apply then or wait, Farid asked Dean Laura Abramson "whether [he] still remain[s] in danger of termination through a failed tenure review" and "[t]o get a clear indication in

7

writing and in person from the Thayer Dean's office of when it is appropriate to go up for tenure." App. 658. That summer, he spoke with Abramson and Associate Dean Laura Ray, both of whom informed him that they supported him applying for tenure in the upcoming academic year. *Id.* Farid submitted for tenure review during the 2020-2021 academic year. App. 584.

Dartmouth awarded tenure to Assistant Professor Vikrant Vaze that year. App 589. Farid provided evidence of his funding and expenditures to Abramson compared to Vaze - $1,857,968 PI (principal investigator) funding for Farid compared to $2,068,832 for Vaze. *Id.* 589, 673. At this time, Vaze had 24 peer reviewed publications compared to 45 for Farid. *Id.* at 589, S. App. 37. Farid submitted his dossier for tenure in or around October 2020, unaware that by submitting prior to the end of his tenure clock, he did not have another opportunity to apply again if his submission was unsuccessful. *Id.* at 589, 374. The tenure committee's reasons were student evaluations, funding, and that his external letter writers were collaborators. S. App at 46-47.

In Vaze's tenure submission, he included external review letters from former professors who collaborated with him or knew him personally according to their letters. S. App. 269, [2] Two

---

[2] The CAP is the Committee Advisory to the President that recommends tenure decisions to the President of Dartmouth. S. App. 59.

8

external review letters, Profs. Cynthia Barnhart and Amedeo Odoni, collaborated on a peer-reviewed article with Vaze. S. App. 174, 180.[3]

Dartmouth acknowledges to its faculty that student evaluations are inherently biased and unreliable as assessments of teaching effectiveness.[4] App. 675. In the year leading up to his tenure review, Farid had received a classroom observation that was "neutral to positive." App. 643.

Dartmouth reversed the decision to deny tenure to Farid based on finding that procedural errors occurred that could reasonably have affected [his] tenure case." App. 373. The Review Committee found that Associate Dean Ray did not explain the ramifications of applying for tenure when Farid did, that a new set of tenure procedures specific to Thayer were not clearly defined, and that "everything in the record that was shared with [the Review Committee[ indicates that Prof. Fard was treated as an assistant professor." *Id*.

ii. Facts For Retaliation Claims.

---

3 ; Barnhart, Fearing, Odoni, Vaze, "Demand and capacity management in air transportation," EURO J Transp Logist (2012) at
https://www.sciencedirect.com/science/article/pii/S2192437620600127.
4 Farid's teaching evaluations had improved each year at Dartmouth until the COVID-19 pandemic began in the spring of 2020. App. 621-22.

After Farid was denied tenure, he filed a complaint of discrimination with the New Hampshire Commission for Human Rights in or about November 30, 2021, which the Commission sent to Dartmouth, via its Office of General Counsel, on or about December 14, 2021 (the "Complaint"). App. 354. On or about December 27, 2021, Farid published a research paper titled "A Profit-Maximizing Security-Constrained IV-AC Optimal Power Flow Model & Global Solution" in a peer-reviewed journal IEEE Access ("ACOPF Paper"). App. 448. He was listed as the sole author. *Id.* The research for the paper was assigned at various times in Farid's lab to graduate students Steffi Muhanji (who graduated with a Ph.D. in the spring of 2021) and later to Prabhat Hegde. App. 688. Hegde left Farid's lab in February 2021 voluntarily after complaining about Farid and the project being a waste of time and not being worthwhile. *Id.* at 689.

On January 7, 2022, Hegde emailed a concern about not being listed as a co-author on the ACOPF Paper. S. App. 196. Associate Dean Holly Wilkinson reported to Abramson that Hegde "mentioned potentially reporting this to IEEE but wanted to know what Dartmouth processes were available to him to resolve this ethical issue." *Id.* Dartmouth had its own Authorship Guidelines at the time. *Id.* Instead of referring to the Authorship Guidelines, however, Dean Abramson referenced the Dartmouth Research Misconduct Policy to Wilkinson, who said she would pass

this on to Hegde. S. App. 196

On January 18, 2022, Hegde emailed a complaint to Abramson concerning Farid and the ACOPF Paper. S. App. 91. Though the subject of his email is Research Misconduct, Hegde raised his concerns against Prof. Farid to get authorship on the paper. App. 700. He quoted the authorship guidelines from IEEE Access. S. App. 91.

IEEE Access had its own internal procedure for investigating authorship disputes that was available for Hegde but neither Hegde nor the school officials pursued those. S. App. 201. Vice Provost of Research Dean Madden[5] and Abramson then conferred and opened an Inquiry under the Research Misconduct Policy. App. 655.

Under the Research Misconduct Policy ("RM Policy"), Provost David Kotz oversees research misconduct investigations, though he delegated the oversight for Farid's investigation to Madden, who is the Research Integrity Officer. S. App 199. Director of Research Integrity Henrike Frowein, who reports to Madden, facilitates research misconduct investigations from commencement to conclusion. App. 711-13.

The RM Policy requires Dartmouth to sequester all relevant Research Records, which includes any "data, document computer

---

5 Dean Madden is not a dean, but the Vice Provost: Dean is his first name.

11

file . . . that reasonably may be expected to provide evidence or information regarding the proposed, conducted, or reported research that constitutes the subject of an allegation of Misconduct." *Id.* at 472, 478. Farid drafted his research papers for his lab on a cloud-based repository Overleaf.com, which uses a LaTex-based drafting tool that allows researchers to work collaboratively in real time and see historical changes. App. 761-63. When Hegde left Farid's lab in February 2021, he was the account holder of an Overleaf repository linked to a manuscript for the ACOPF research for which he was listed as a co-author along with Farid and graduate student Muhanji. *Id.* at 696-97. He then locked Farid out of that account. *Id*. After being informed about the research misconduct Inquiry, Farid twice informed Dartmouth officials about the significance of Overleaf evidence and requested access. S. App 208-212. However, Farid was not provided access to this evidence by Dartmouth until September 2023, after Dartmouth opened the formal Investigation. *Id.* at 214-217.

The Inquiry Process has a sixty-day time limit under the RM Policy "unless circumstances clearly warrant a longer period and the Provost approves an extension." App. 481. The Provost (or in this case, his designee Madden) decides whether the Inquiry warrants conducting a formal Research Misconduct Investigation. *Id*. at 481. The Inquiry ultimately took nearly thirteen months:

from April 11, 2022, S. App. 153, until Madden decided to open the Investigation on May 2, 2023. *Id.* at 204

Farid did not spend any federal grant money on the ACOPF Paper. App. 756. Although Hegde was funded partially through a federal grant at the time, Farid retroactively reallocated his funding to his internal budget before Hegde brought his allegations in January 2022 and Prof. Kenneth Loparo, an outside professor retained by Defendant in part for his subject matter expertise, recognized this was appropriate in his role on the Investigation Committee. *Id.* Dartmouth reported the investigation to the NSF in June 2023. S. App. 124.[6]

The Investigation Committee ("Committee") was initially comprised of Dartmouth Professors Andrew Campbell, Prasad Jayanti, and Case Western University Professor Kenneth Loparo, who shared Prof. Farid's expertise in energy systems. S. App. 214. Madden attended the first meeting of the Committee on May 2, 2023 and explained its limited role: "[W]e don't want to open the frame that doesn't impact the case. For example, unprofessional behavior, bad mentoring, wasting money. These issues fall into a different bucket and need to be kept out of the research misconduct process." *Id.*

---

[6] As the referral letter from NSF to Dartmouth indicates, the "Office of Inspector General at the [NSF} is responsible for handling allegations of research misconduct involving NSF proposals and awards." *Id.*

13

Farid asked the Committee for written interview questions in lieu of an in-person interview as a medical accommodation. S. App. 129. Frowein asserts that she was willing to accede to his request for written interview questions and does not recall the Committee opposing the request. App. 730-731. However, no offer was ever made to Farid. *Id*. The Committee met with Hegde, reviewed the documents that he submitted with his complaint, and solicited additional documents from him and clarifying information over a course of several months. App. 734-735.

By August 2023, Dartmouth had still not provided Farid with access to the Overleaf repository despite his requests, and Prof. Farid sent a letter to Hegde (through counsel) asking for access so he could prepare a response to the allegations against him. S. App. 216; App. 725. The committee members believed he already had access until they were told otherwise by Frowein. App. 726. After Hegde notified Dartmouth about the letter, Dartmouth caused the Overleaf repository to be made available to Farid and simultaneously told the Committee that Farid's letter to Hegde could be considered retaliation. S. App. 216.

On October 18, 2023, Farid submitted an analysis of the ACOPF Paper against the Overleaf repository last held by Hegde and the changes to the paper since Hegde left his lab ("ACOPF Analysis"). S. App. 218; App. 765. The ACOPF Analysis compared two Overleaf repositories: the one created by Farid after Hegde

14

left the lab through which he drafted the final ACOPF Paper, and the repository that was used by Hegde and Farid during the time that Hegde was in the lab. *Id.* The resulting analysis attempted to show that any substantive work by Hegde did not remain in the published paper. App. 725, and throughout. Farid told Frowein in transmitting his analysis: "I am happy to answer any questions about this analysis." S. App. 218-219. The email was forwarded to each member of the Committee. *Id.*

No one from Dartmouth contacted, or asked questions to, Farid about his analysis. App. 733. In the resulting Draft Investigation Report and Final Investigation Report, the Committee did not consider the ACOPF Analysis. S. App. 77, 142.

In January 2024, Frowein drafted an Investigation Report for the Committee without any detail that concluded: "The Committee concludes that Research Misconduct did occur." S. App. 227. At the time, each member of the Committee denies having reached this determination or authorizing the drafting of a report. App. 755 (Loparo), 785 (Jayanta), 796-797 (Campbell).

In January, Frowein told the Committee that Farid had filed the present federal lawsuit related to his tenure being denied and that the lawsuit includes the allegation that the misconduct investigation was retaliation. S. App 223. At the same time, the Committee asked Frowein to hire a consultant to review the October 18, 2023 submission by Farid. *Id*. at 224. In March, she

told the Committee that Dartmouth would hire Huron Consulting to review the document and put a recommendation together." App. 687; S. App. 122. At the same meeting, Prof. Campbell told her that the Committee "does not see a way forward in working within the normal RM process" and that he wanted the dispute resolved an authorship dispute. S. App. 122. After the March 2024 meeting, all three members of the Committee resigned. App. 194.

Attorney Mark Barnes, a partner at Ropes & Gray, LLP, was providing legal advice to Dartmouth on the research misconduct investigation. App. 800-801. Dartmouth considered him an outside counsel and referred to him as such in several communications with the then-Committee members and other personnel. *Id.* at 800, 747-750. After Loparo left the Committee, Barnes convinced him to rejoin and together they formed a new two-person Investigation Committee. *Id.* at 800. At this time, Barnes asserts that he stopped serving as outside counsel to Dartmouth and only served a member of the Committee. *Id*. at 801.

The newly constituted two-member Committee issued a Draft Report on October 18, 2024, which determined that Farid did not committee research misconduct. S. App 130. The Committee then determined that Hegde deserved authorship credit for the ACOPF paper. *Id.* at 148. The report refers to allegations of retaliation against Farid regarding a paper known shorthand as the "Tensor-Based Formulation" raised by Hegde for which Farid

16

had never received notice and referred those to the Provost Office. *Id.* at 19, 200. The Draft Report also recommends several punitive measures against Prof. Farid, including a hypothetical termination of employment if he were still employed at Dartmouth and cessation of any further collaboration on grants and research contracts or a role as advisor to students. *Id.* at 148. At the time, Farid's wife, Inas Khayal, was employed by Dartmouth as a tenure-track Assistant Professor. App. 720.

Loparo did not agree with the punitive recommendations and would not have included the recommendation concerning grants and collaboration if he drafted the report by himself. App. 758. He felt that Farid's behavior was a breach of his professional relationship with Hegde, not ethics. Id. at 752. The Committee issued a Final Report on or about December 12, 2024. S. App. 65. The Final Report differed from the Draft Report in that it determined that Hegde deserved authorship credit "or an acknowledgement at the least, for his months of hard work and overall contribution to the Manuscript and Paper." *Id.* at 88. The final report still included the recommendation for punitive measures, except the hypothetical termination. *Id.* Loparo says that he asked Barnes about the impact of these measures since it was "outside the scope" of the RM policy, and "it was not part of the – what we were asked to do in terms of research misconduct." App. 761-62.

When Frowein communicated with Barnes in August 2024 about Farid's ACOPF Analysis, she wrote: "It is certainly true that [Farid] tried very hard to delay the process every step of the way." S. App. 229. When Farid issued his comments to the Draft Report on November 18, 2024, Frowein forwarded to Loparo and Barnes with the following message: "[M]any of the exhibits [attached to his response] have very little or nothing to do with the research misconduct matter, and I'm seeing many of them for the first time. . . Together with the exhibits I interpret this as another attempt to pull the research misconduct matter prominently into the litigation against Dartmouth, and portrait it as a retaliatory move." *Id.* at 243. Frowein forwarded Hegde's comments to the Draft Report to Loparo and Barnes the next day without any similar commentary on Hegde's response, but told the Committee that she "continue[d] to be troubled by the retaliatory nature of Farid's actions against Prabhat." *Id.* at 245. She also inquired about the retaliation issue concerning the other papers in the Draft Report: "I am wondering if the language addressing this should be strengthened." *Id.* On November 26, 2024, Barnes sent her a draft report to review before sending to Loparo. App. 747-750. She spoke with Attorney Barnes without including Loparo. *Id.* at 743.

After the final report was issued, Provost Kotz issued a letter to Prof. Farid on February 12, 2025 that purported to

18

conclude the research misconduct investigation and asked Prof. Farid to request IEEE Access to facilitate co-authorship for Hegde on the ACOPF Paper. S. App 150. The letter from Kotz also said that Dartmouth determined that Hegde deserves authorship credit on a second paper: "The hetero-functional graph theory toolbox," and that Dartmouth believed that the paper had been submitted to IEEE Access for review. *Id.* This second paper had never been submitted to IEEE Access for review and Dartmouth had never investigated the issue of Hegde's authorship on this paper. App. 641.

### Procedural History

On Sept. 11, 2023, Farid filed a Federal Complaint in the district court against Dartmouth alleging four counts: discrimination based on religion and/or national origin in violation of Title VII (Count I), discrimination based on religion and/or national origin in violation of New Hampshire Revised Statute Section 354-A:7 ("RSA 354-A:7") (Count II), retaliation in violation of Title VII (Count III), and retaliation in violation of RSA 354-A:7 (Count IV). On November 13, 2023, Dartmouth filed an Answer to the Complaint.

On January 28, 2025, Dartmouth filed a Motion to Compel Pursuant to Rule 37. App. 19. On February 11, 2025, Farid filed an Objection to Defendant's Motion to Compel Pursuant to Rule 37. *Id.* at 153. On April 30, 2025, Dartmouth filed a Motion for

Summary Judgment, with an accompanying Memorandum of Law. App. 183. On May 30, 2025, Farid filed an Objection to Defendant's Motion for Summary Judgment, with an accompanying Memorandum of Law. *Id.* at 585. On June 6, 2025, Defendant filed a Reply in Support of its Motion for Summary Judgment. *Id.* at 823.

On June 5, 2025, the district court issued an Order on several outstanding discovery issues, including "grant[ing] in part" Dartmouth's Motion to Compel and "ordering Farid to provide, as promptly as is practical, the metadata related to document production, as agreed in the ESI Protocol." App. 888.

On July 2, 2025, the district issued a Sealed Order granting in full Dartmouth's Motion for Summary Judgment. S. App. 717. Judgment was entered for Dartmouth on the same date.

## Summary of the Argument

This Court should reverse the district court's order granting summary judgment to Dartmouth on the claims of retaliation and discrimination under Title VII and RSA 354-A:7 because a reasonable jury could determine that Dartmouth retaliated and discriminated against Farid in violation of the statutes based on the record before the district court.

On the claims of retaliation, the district court erred by finding that Farid did not show evidence of a "causal link" at the prima facie step of a retaliation claim where the prima

facie case is not an onerous burden and Dartmouth did not present any argument on the prima facie burden in its Motion. *Infra* at 22. The district court erred in finding that Farid did not show sufficient evidence that the initiation of the research misconduct investigation or biased investigation itself was a pretext for retaliation. The district court further erred in the failing to consider evidence in the record of pretext submitted by Farid because he did not explicit cite to the record evidence in his Argument section in his Opposition where no such requirement is required where he cited to substantial evidence of retaliation in his Statement of Facts section. *Id.* at 32.

On the claims of discrimination, the district court erred by granting summary judgment to Dartmouth even though a reasonable jury could conclude based on the circumstances as a whole that Farid was denied tenure because of his religions or national origin. *Infra* at 36. The district court did not clearly articulate whether it treated a similarly-situated professor granted tenure by Dartmouth one year prior to Farid by the same tenure committee as a comparator, and the record shows that Dartmouth treated this comparator more favorably that Farid. The district court further erred by applying a restrictive "checklist" legal standard to the disparate treatment analysis, examining each alleged issue or conduct raised by Farid

separately rather than holistically as a jury would at trial. *Id.* at 44.

The district court also abused its discretion in granting in part Defendant's Motion to Compel and ordering Farid to produce metadata for previously-produced emails under the parties' ESI Protocol, where the protocol was expressly subject to Fed.R.Civ.P 26(b)(1) and Farid had informed Dartmouth at the time of production that the emails would be produced without the metadata and Dartmouth proceeded to take Farid's deposition without the metadata before filing the Motion. *Infra* at 45.

**Argument**

**I.   STANDARD OF REVIEW**

This Court reviews a summary judgment ruling on Title VII and RSA 354-A:7 claims *de* novo, "affirming only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Brandt v. Fitzpatrick*, 957 F.3d 67, 74 (1st Cir. 2020).[7]

---

[7] While *Brandt* concerned Title VII, claims under Title VII and RSA 354-A:7 are analyzed identically. *See Beauchesne v. Aging Excellence, Inc.*, 2025 U.S. Dist. LEXIS 194176, *22 (Sept. 30, 2025), *citing Rolfs v. Home Depot U.S.A., Inc.,* 971 F. Supp. 2d 197, 208 (D.N.H. 2013) (noting that "the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354-A," and addressing retaliation claim under Title VII standard).

The Court reviews an order granting a motion to compel for abuse of discretion. *See Dennis v. Osram Sylvania, Inc*., 549 F.3d 851, 859 (1st Cir. 2008).

## II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT ON COUNTS III AND IV UNDER TITLE VII AND RSA 354-A:7.

The district court erred in granting summary judgment to Dartmouth on the claims of retaliation on Counts III and IV under the Title VII and RSA 354-A:7 because a reasonable jury could conclude based on the evidence that Dartmouth initiated the research misconduct investigation and conducted a biased investigation because Farid filing the Complaint, *and* because the district court did not consider the evidence submitted by Farid and cited appropriately in his Opposition brief.

### A. The Record Contains Sufficient Evidence for A Reasonable Jury To Find That Dartmouth Retaliated Against Farid for Filing The Title VII and RSA 354-:7 Complaint Through The Research Misconduct Investigation.

A claim of retaliation under Title VII and RSA 354-A:7 requires a plaintiff to establish, as a *prima facie* case, that (1) he engaged in protected activity under Title VII, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected

---

Farid therefore addresses the federal and state claims of discrimination and retaliation without distinction.

23

activity. *See Ray v. Ropes & Gray LLP*, 799 F.3d 99, 107 (1st Cir. 2015). "The prima facie burden in this context is not an onerous one." *Fournier v. Massachusetts*, No. 20-2134, 2021 U.S. App. LEXIS 27676, at *7 (1st Cir. Sep. 15, 2021) (describing *prima facie* case in Title VII retaliation case).

Once a prima facia showing is made, the *McDonnell Douglas* burden-shifting approach is employed, and defendant must articulate a legitimate, non-retaliatory reason for its employment decision. If the defendant meets this burden, the plaintiff must show that the proffered reason is a pretext for retaliation. *Calero-Cerezo v. United States DOJ*, 355 F.3d 6, 26 (1st Cir. 2004).

i.   Dartmouth Waived Argument About Prima Facie Case.

At the district court, Farid did not argue the prima facie case on retaliation, focusing only on the issue of pretext, because Dartmouth did not address the prima facie case in its Motion but only addressed the issue of pretext. App. 201-205. Thus, Farid considers the question of whether he submitted sufficient evidence to satisfy his prima facie case waived for purposes of appeal. *See Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 412 (1st Cir. 2015), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (burden is on moving party at summary judgment to show a lack of evidence supporting each of the claims); *GGNSC Admin. Servs., LLC v. Schrader*, 917 F.3d 20,

23 n.3 (1st Cir. 2019)(ruling that party waived argument concerning arbitration by not raising it before district court).

The district erroneously concluded that Farid failed to show evidence of a "causal link." S. App 741-42. As previously explained, Dartmouth did not present any argument directly on the *prima facie* case but argued that "the plaintiff cannot point to any evidence that the process was in fact a pretext for retaliating." App. 205. In fact, Dartmouth emphasized that "[a]lthough similar evidence can support causation and pretext, a plaintiff is required to show that their employer would not have taken the adverse action but for a desire to retaliate." *Id*. at 203, *citing* Fournier, 2021 U.S. App. LEXIS 27676, *10, n.3, Stratton,13 F.4th at 44. By making this argument without directly addressing the prima facie case, Dartmouth implicitly admitted that the prima facie case was not disputed. *See also Dusel v. Factory Mut. Ins. Co*., 52 F.4th 495, 509 (1st Cir. 2022) ("[In] retaliation claims, the third element of the prima facie case and the third McDonnell Douglas stage are not easily distinguishable.").

Nonetheless, assuming, *arguendo,* the Court does not consider this issue waived, Farid submitted sufficient evidence to show a *prima facie* case of retaliation. He filed the Complaint in December 2021, Dartmouth initiated the research misconduct investigation process one month later in January 2022

25

(which continued for nearly three years, only concluding with a final report in December 2024 that found (improperly) that he failed to give proper authorship credit to his student and recommended that Dartmouth contact the publication to and cut off any further research collaborations with him).[8] The district court mistakenly  concluded that there was no evidence of a causal link by finding that the investigation into Farid was not temporally close to his complaint because it "began in August of 2022, after the review and inquiry into Hegde's complaint." S. App at 749. But this finding skips over the "review and inquiry" period which triggered the investigation. *See Lestage v. Coloplast Corp*., 982 F.3d 37, 47 (1st Cir. 2020) (holding that employee placed on leave four days after protected activity set of chain of events leading to adverse action). The prima facie case is clear from the record.

      ii.   The Record Contains Sufficient Evidence To Allow A Jury To Find That The Research Misconduct Investigation Was A Pretext for Retaliation.

---

[8] There should be no dispute that the investigation itself, even before the report, is an adverse action under Title VII. An adverse action for retaliation claims under Title VII is defined as any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Ahern v. Shinseki*, 629 F.3d 49, 55 (1st Cir. 2010). A research misconduct investigation for a research university professor fits this definition. This does not appear to have been disputed at the district court.

As this Court recently explained, defeating a motion for summary judgment in a retaliation case does not require the plaintiff to "prove retaliation by a preponderance of the evidence." *Mercado v. Hyannis Air Serv.*, No. 23-1744, 2025 U.S. App. LEXIS 24455, at *8 (1st Cir. Sep. 22, 2025). "Rather, the rule [government summary judgment] contemplates an abecedarian, almost one dimensional, exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact. *Id.* at *7-8.

The district court erred in granting summary judgment on Counts III and IV because it did not consider "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Id.* at *14-15. The district court failed to consider substantial evidence of pretext in the initiation and processing of the research misconduct investigation. The evidence includes inconsistent applications of policies, biases by administrators and committee members, and deviation from standard procedure.

The record shows that Dartmouth provided the most essential evidence for the investigation – the Overleaf

27

repository – to the Investigation Committee and withheld the evidence from Farid until his attorney sent a demand letter to Hegde. S. App. 216. The district Court dismissed this fact because the "Overleaf repository was controlled by Hegde, not by Dartmouth." S. App. 744. But Dartmouth acknowledged that it obtained the repository from Hegde and provided it to the Committee. S. App. 216. Farid also presented evidence of "intervening antagonism" from Frowein through her communications with Barnes and other messages where she made negative comments about Farid's conduct. S. App. 233-247. The district did not consider this evidence in the light most flattering to Farid. *Mercado*, 2025 U.S. App. LEXIS 24455, *7-8.[9]

The record also shows that Dartmouth deviated from the scope of its research misconduct investigation as originally designed. When the Investigation Committee first formed, Madden met with the Committee and gave them a clear instruction: "[W]e don't want to open the frame that doesn't impact the case. For

---

9 In Farid's Statement of Facts from his Objection, he cites to an email where Frowein states: "I would strongly prefer a clear statement that the complainant deserves authorship. Not sure if Ken has a reason why he seems to be hesitant as to this point. Of course, it's for the committee to decide, but I really believe the record shows that Hegde significantly contributed." App. 550-551. The quote was mis-cited to a November 19, 2024 email (S. App. 245, Ex. 35) and the portion of the actual December 4, 2024 email from which it appeared (S. App. 247, Ex. 36) was inadvertently omitted, thus it is not part of the record Appendix, but the quotation was included in the Statement of Facts without rebuttal from Dartmouth.

28

example, unprofessional behavior, bad mentoring, wasting money. These issues fall into a different bucket and need to be kept out of the research misconduct process." S. App. 214. When the committee decided that Farid's conduct did not meet the definition of research misconduct, Attorney Barnes joined (after he finished advising Dartmouth on the investigation) and changed this direction, expanding the investigation to include the issues that Vice Provost Madden had previously told the committee not to include. *See Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 50 (1st Cir. 2019) ("Evidence that the employer deviated from its standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry.")

The district court cited Barnes "expert" opinion that it is standard for research misconduct investigations to expand beyond the issues of research misconduct," but did not consider the evidence of Madden's clear instructions to the Committee that its investigation should be narrowly contained. S. App. 747. A jury would be free to consider *either* piece of evidence, not required to favor Dartmouth's expert. *See United* States v. Corey, 207 F.3d 84, 92 n.14 (1st Cir. 2000) (noting instruction to jury that it could "could accept or reject that expert testimony").

29

The record also includes evidence that the investigation itself was biased against Farid. Frowein, who oversaw the committee's deliberations, repeatedly injected her opinions into the Committee's work; the committee did not consider Farid's ACOPF Analysis over the Overleaf repository even though its members agreed that it was relevant; Dartmouth ultimately ignored advice by its Committee in March 2024 to retain an outside consultant to review Farid's ACOPF Analysis *and* the opinion that Hegde's allegations concerned an authorship dispute and were outside the scope of the RM Policy. *See Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R. v. NLRB*, 414 F.3d 158, 163 (1st Cir. 2005) ("The conducting of an inadequate investigation of (or a complete failure to investigate) the incident upon which the employer relied as grounds for discharge can support a finding of discriminatory motive.");[10] *Cook v. CTC Communs. Corp.*, 2007 U.S. Dist. LEXIS 96979, at *22 (D.N.H. Oct. 30. 2007) (finding that investigation could be viewed as bias as

---

[10] In Sociedad Espanola, the NLRB found that the underlying investigation was "inadequate" and the supervisor's "failure to investigate thoroughly the charges against [the employee] evidenced a rush to judgment motivated by anti-union animus." Id. at 162. This Court affirmed the finding under a substantial evidence review. Id. at 163. The same general conclusion can be made by the fact-finder here; that the investigation did not follow either standard procedures or the direction of the Vice Provost, which facts are undisputed, but was rather motivated to reach a conclusion against Farid because of his Title VII claim against Dartmouth.

one factor in finding pretext on FLSA retaliatory termination claim).

A jury could also find bias when Dartmouth concluded in the investigation that Farid had failed to give his student authorship for the ACOPF Paper when the conclusion of the two-person committee was in fact split – Loparo concluded that Farid only should have given the student an acknowledgment and did not agree with the sanctions, while Attorney Barnes concluded that Farid should have given him authorship. Further, in giving Farid its final directive, Dartmouth revealed its bias by ordering Farid to declare the same student an author on a second paper that was never sent for publication. S. App. 150; App. 639.

The district Court also misconstrued Farid's argument on pretext concerning the Authorship Guidelines. The district court found that "[Farid] provides no evidence to show that [Authorship] Guidelines but not the [Research Misconduct] Policy applied in his case" and "provides no evidence to show that proceedings under the Authorship Guidelines would have had a different outcome." S. App 744. However, Farid did not contend, nor did he need to contend, that the *outcome* would have been different necessarily under the Authorship Guidelines or that the Guidelines applied *but not* the Research Misconduct Policy. He alleges that Dartmouth's *choice* to apply the Research Misconduct Policy instead of the Authorship Guidelines

31

demonstrates a motive to retaliate and caused harm. Following the Authorship Guidelines does not involve formation of an investigation committee or notice to the federal sponsoring agency. Rather, the authorship guidelines state – in one sentence -- that authors resolve disputes over authorship themselves. App. 575-76.

Dartmouth's own expert, Attorney Barnes, concluded that Hegde raised an authorship dispute and not an allegation of research misconduct. When they received the allegation from Hegde, however, Dartmouth made the decision to pursue an investigation of research misconduct rather attempt to resolve a dispute between a student and his professor over authorship -- that the student himself described in terms of authorship dispute -- shortly after being notified about Farid's complaint. S. App. 91, 196. Abramson, who was a subject of the Complaint recently filed by Farid, received the allegation from Hegde and immediately referenced the Research Misconduct Policy.

The district court is not the factfinder. *See CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 849 (1st Cir. 1985) ("When conflicting evidence is presented, from which contradictory inferences may be drawn, it is the role of the jury to make the ultimate determinations of fact.") While a jury might agree with Dartmouth that the decision to initiate an investigation was

32

mandated by the Research Misconduct Policy, the evidence certainly does not require this finding.

For the foregoing reasons, this Court should reverse the district court's order granting Summary Judgment in favor of Defendant on Count III and IV of Farid's Complaint.

B.    **The District Court Failed To Consider Farid's Evidence in Assessing The Retaliation Claims Under Counts III and IV.**

According to the Sealed Order, the district court did not consider a large portion of Farid's evidence in support of his retaliation claim. The decision indicates that the district court failed to consider the evidence because Farid did not specifically cite to the evidence in the Argument section of the Opposition. In several places, the district court found that Farid provided "no evidence" in support of a factual assertion. S. App. 744. In one instance, the decision states: "To show deviation from procedures, however, Farid only states 'as recounted supra' without citing evidence of unauthorized activity or a specific part of his factual statement where that could be found." *Id.* at 746.

The term *supra* means "above" and is a commonly used short form citation. Black's Law Dictionary; Bluebook Rule 4.1 (22nd). In citing *supra*, Farid's Objection was citing to the preceding factual summary section where the factual support for the

assertion in the Argument could be found. App. 584-598. Nothing in the Local Rules for the United States District Court for the District of New Hampshire requires factual citation in an Argument section in a Motion for Summary Judgment or an Opposition. *See* District of New Hampshire L.R. 56.1.

Dartmouth also did not cite to facts in its Argument section except sparingly. It cited to exhibits in its factual summary section, then largely omitted citations to facts in its Argument, only citing to three facts in its argument on the retaliation claim and citing *zero facts* in arguing for summary judgment on the discrimination claim. App. 197-207.

A central tenet of judicial review is that parties must be treated equally before the Court. *See Vernet v. Serrano-Torres*, No. 00-2559(DRD), 2012 U.S. Dist. LEXIS 202023, at *4 (D.P.R. May 29, 2012) ("The Court's role in all cases . . . is to treat all parties who come before the Court equally, regardless of color, race, religion, sex, sexual orientation, nationality, socio-economic background and residency.") The district court failed to heed this requirement in assessing Farid's retaliation claim. The "court held [the] opposing parties to materially different standards in the application and enforcement of a [unofficial] local rule." *P.R. Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 133 (1st Cir. 2010).

Farid submitted forty exhibits in support of his Opposition to Summary Judgment.[11] Farid cited to the exhibits in the factual summary, and where necessary, referenced the page number of the deposition where a cited fact could be found. In the Argument section, Farid referred to the facts but did not repeat these citations. The district court disregarded this evidence and yet considered the evidence submitted by Dartmouth in support of its Motion.

Contrary to the district court's decision, Farid provided evidence to support his evidence of pretext. Farid provided numerous "citation to record evidence" to support his argument that "Dartmouth repeatedly tried to influence the Committee's deliberations through Frowein's commentary." S. App 745; S. App. 227, 243-245 (e.g., drafting report with conclusion of misconduct before committee members had concluded, telling committee that she "interprets [Farid's conduct] as another attempt to pull the research misconduct matter prominently into the litigation" and telling members that she is "very troubled by the retaliatory nature of Farid's actions"). Farid also provided evidence of "deviation of procedures." S. App. 745; S. App. 214 (deviating from Madden's instructions).

---

[11] Under the Local Rules of the District of New Hampshire, the Objection does not include a separately-filed Statement of Material Facts. L.R. 56.1(b).

For the foregoing reasons, this Court should reverse the district court's order granting summary judgment to Dartmouth on Counts III and IV of the Complaint.

### III. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DARTMOUTH ON COUNTS I AND II OF THE COMPLAINT.

The record contains sufficient evidence to allow a jury to find that Dartmouth denied tenure to Farid based on his national origin and/or religion. Accordingly, the district court erred in granting summary judgment to Dartmouth on Counts I and II on the claims of discrimination based on religion and/or national origin under Title VII and/or RSA 354 354-A:7. The district court's rulings on these two claims should be reversed.

On a claim of discrimination through indirect evidence, the familiar three-part *McDonnell-Douglas* burden shifting paradigm applies. *See Ripoli v. R.I. Dep't of Hum. Servs.*, 123 F.4th 565, 571 (1st Cir. 2024). A prima facie case requires the plaintiff to establish that he was a member of a protected class, that he was qualified for the job, that he suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving rise to an inference of discrimination. *Id.* "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* at 572.

Once the plaintiff carries his burden of showing a prima facie case, the burden of production shifts to the defendant,

36

who must provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant puts forth such an explanation, the burden then reverts to the plaintiff to show that the defendant's stated reason for the adverse action was a pretext for discrimination. *Id.* One means of showing pretext is through comparator evidence. *See Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 507 (1st Cir. 2022) ("The most probative means of establishing that the plaintiff's termination was a pretext is to demonstrate that similarly situated employees were treated differently.")(internal citation and ellipses omitted).

**A.    Farid Submitted Sufficient Comparator Evidence.**

Farid offered Vikrant Vaze, an assistant professor awarded tenure by Dartmouth in the Engineering Department in the year of Farid's application for tenure, as a comparator. The district court noted that "Dartmouth disputes that Vaze is a valid comparator," S. App. 733, but did not expressly rule on the Defendant's challenge to Farid's comparator evidence. Rather, the district court explained that "[d]ifferences in qualifications between job candidates, on their own, cannot be evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue," S. App. 734, *citing Hatcher v. Bd. of Trs. of S. Illinois Univ.*, 829

37

F.3d 531, 540 (7th Cir. 2016). The district court stated that "Vaze's superior status in terms of funding, student reviews, and evaluations all undermine Farid's argument that Vaze is an appropriate comparator." S. App. 734-35. But the district court did not expressly rule that Vaze is, or is not, a comparator. In fact, the district court proceeded to compare the tenure committee's decision to grant tenure to Vaze with its decision against granting tenure to Farid in finding that there was no evidence of discrimination. *Id.* at 735.

Vaze is certainly an appropriate comparator. *See Ripoli*, 123 F.4th at 575 ("When evaluating such comparators, reasonableness is the touchstone: while the plaintiff's case and the comparison cases that [he] advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances."). Vaze and Farid worked for the same department and applied for tenure in successive years to the same tenure committee through the same tenure process.[12] *See id.* at 578 (rejecting challenge to comparator evidence based on "different jobs, education, and skillsets" between plaintiff and comparator). *Compare Dusel*, 52 F.4th at 507 (skeptical of comparator evidence where proposed comparator was "subordinate [and] had a different title, fewer responsibilities, and lower

---

12 Dartmouth does not dispute that Vaze is outside of Farid's protected class.

compensation"); *Kim v. Bd. of Trs. of the Ala. Agric. & Mech. Univ*., 2014 U.S. Dist. LEXIS 134321, at *32 (N.D. Ala. Sep. 24, 2014) (explaining that plaintiff cannot claim as comparators associate professors who applied in different years, who were granted tenure by different decisionmakers, or whose fields were otherwise not sufficiently similar").

In challenging Vaze as a comparator, Dartmouth conflates issues of evidence and liability. Whether or not a factfinder finds that Vaze's qualifications for tenure were more deserving, or the tenure committee's differentiation between the two candidates not evidence of discrimination, such factual differences are not grounds to strike the tenure committee's consideration of Vaze's tenure candidacy as relevant and material evidence to the jury's consideration.

**B.    The Record Contains Sufficient Evidence To Permit A Jury to Find Disparate Treatment Under Counts I and II.**

Based on the comparator evidence and the circumstances as a whole during Farid's employment, a reasonable jury could find that Dartmouth denied tenure to Farid based on his national origin and/or religion. The district court erred in reaching an opposite conclusion.

The record reflects that Farid, a more experienced Associate Professor than Vaze, had comparable funding compared to Vaze and a superior scholarship record in terms of

publications. The district court then overlooked the evidence of bias in the tenure committee's review of Farid's overall dossier that a jury could find infected the review of his record compared with Vaze. The district court also dismissed as insignificant the fact that the Review Committee found that "Prof. Fard was treated as an assistant professor" by Dartmouth where he was hired as an associate professor, App. 373, even though this establishes a violation of its tenure policy specifically against him.

The bias against Farid is shown where the tenure committee looked closely at Vaze's and Farid's external review letters, yet the committee only criticized Farid for providing external review letters from professors who collaborated with him on research projects while remaining silent when Vaze offered external letters from two collaborators on a published research paper. S. App. 172, 178. The district court rejected this evidence with the following footnote: "Farid's parsing of the authors of external letters in his case and Vaze's case does not undermine the quality of support for Vaze." S. App. 735. The district court also rejected the evidence of Farid's superior publications with a footnote: "While Farid emphasizes his longer list of publications, the tenure committee considered evidence that publications in Vaze's area of expertise, transportation

40

networks, issue less frequently than other engineering articles, which explains fewer publications." *Id.*

A jury, rather than the court, should be permitted to consider this evidence and whether the bias caused the tenure committee to unfairly discredit Farid's funding record or more heavily weigh his teaching evaluations compared to the rest of his dossier. Farid did not merely "pars[e] the list of authors of external authors" but showed that the committee treated his list differently than it treated Vaze's list. The district court's cavalier dismissal of this evidence follows its disregard of the evidence of retaliatory motive underlying its ruling on Counts III and IV. Under this Court's precedent, a comparator does not need to be treated identically to a plaintiff in all respects on the adverse decision in question, but only similarly enough for the jury to determine whether unlawful discrimination occurred. *Ripoli*, 123 F.4th at 578 (holding that a jury could find that the defendant treated the appellant differently from comparator based on evidence that defendant, "[w]ithout telling the appellant of this new role or providing her with an opportunity to apply for it . . . promoted [comparator] into the role").

While Vaze's teaching evaluations were numerically superior to those of Farid, as the district court emphasizes, Dartmouth has acknowledged the inherent bias in these evaluations. It also

ignored the positive in-person evaluations that Farid received. The record also demonstrates that Farid's superior experience compared to Vaze was turned into a disservice, as the district court credited Vaze's award of a CAREER grant from the National Science Foundation, which is unavailable to Farid as an associate professor. S. App. 729, n. 12; https://www.nsf.gov/funding/opportunities/career-faculty-early-career-development-program/nsf22-586/solicitation#elig ("Faculty members who are Associate Professors or in equivalent appointments, with or without tenure, are not eligible for the CAREER program.")[13]

In declining to reverse summary judgment decisions in favor of research universities in past tenure decisions, this Court has noted: "Evidence that the employer deviated from its standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry, if the deviations are otherwise inexplicable and troubling." *Ing v. Tufts Univ.*, 81 F.4th 77, 83 (1st Cir. 2023), *citing Theidon v. Harvard Univ.,* 948 F.3d 477, 499 (1st Cir. 2020) (internal quotation and one citation omitted). Here, unlike in *Ing* and *Thiedon,* the deviation from standard policy

---

13 *See Rezaii v. Kennedy*, No. 1:24-cv-10838-JEK, 2025 U.S. Dist. LEXIS 44346, at *6 n.2 (D. Mass. Feb. 24, 2025) ("[T]he Court can take judicial notice of the relevant facts provided on HHS's website, which are not subject to reasonable dispute.")

42

and procedure *is* inexplicable and troubling. The deviation does not concern a failure to take meeting notes, *Inge,* 81 F.4th at 83, or to send out a selection of articles to reviewers, *Theidon*, 948 F.3d at 497,[14] but failing to follow the tenure procedure when establishing the required years to advance to tenure, advising Farid on whether to apply for tenure in 2020, and applying a different standard compared to Vaze in the actual review. *See Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1991) ("recogniz[ing] that Congress has committed to the federal courts a duty which we may not abdicate . . . of eliminating workplace discrimination, within educational settings as well as without").

A reasonable jury could view the tenure committee's treatment of Vaze, a similarly-situated professor outside of Farid's protected class, in combination with the circumstantial evidence of discrimination in Farid's employment recounted below, to infer discriminatory intent by Dartmouth in denying Farid tenure. *Mercado,* at *14-15 (instructing court to consider "the circumstances as a whole" on summary judgment). These circumstances include the following: Farid was appointed at the

---

[14] In *Theidon*, the faculty "handbook establishe[d] neither a floor nor ceiling for the sampling of publications from a candidate's dossier that must be circulated as part of the candidate's tenure file," although Harvard acknowledged an error in its failure to circulate certain of the plaintiff's articles to reviewers. *Id.* at 498.

position of associate professor, which has a three-year tenure track under the faculty handbook, but he was treated (as found by Dartmouth in its internal review) effectively as an assistant professor because he could not submit for tenure until his sixth year. Farid was discouraged from participating as a faculty advisor to Al-Nur Muslim Student Association while a non-Muslim faculty was allowed to participate in extra-curricular activity during their tenure-track years. Farid, whose expertise is energy systems, was prevented from obtaining data for his research when he requested access to campus-wide energy systems data over several years but was not allowed access, and in 2019, was removed as an advisor to a student project where he would have gained access to energy systems data. He inquired about the consequences of applying for tenure in 2020, when he had two years left on his tenure clock, and asked to "get a clear indication in writing and in person from the Thayer Dean's office of when it is appropriate to go up for tenure." As discussed more fully below, these actions cannot be separated from the entirety of Farid's wholesale experience leading to his denial of tenure.

**C.    The District Court Applied An Incorrect Formulaic Standard in Granting Summary Judgment on Counts I and II.**

The district court applied a formulaic checklist approach to the discrimination claims under Counts I and II rather than

44

the "one dimensional[] exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact." *Marcado*, 2025 U.S. App. LEXIS 24455, *8.[15] The district court considered each piece of evidence separately – procedural error in the tenure process, comparator evidence, unfriendly work environment – and struck each off the list as supporting the disparate treatment claim, then concluded: "Farid has not provided direct evidence of discrimination by the tenure committee and has not provided a factual basis for indirect evidence of discrimination through pretext." Sealed Order at 23.

Farid has two identical claims of disparate treatment arising out of the *single* adverse action of tenure denial. The district court's approach robs Farid of the holistic review that a jury would take to the evidence for this single adverse action at trial. *See Vichio v. United States Foods, Inc.,* 88 F.4th 687, 691 (7th Cir. 2023) ("[W]e look at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination."); *Thomas v. Sheriff of Jefferson Cnty.*, No. 22-13875, 2023 U.S. App. LEXIS 26637, at *16 (11th Cir. Oct. 6,

---

[15] Although *Marcado* was a decision concerning only retaliation under Title VII (or the Puerto Law equivalent), the Court's discussion here concerned the summary judgment standard under Fed.R.Civ.P 56.

2023) ("[W]e must approach the convincing mosaic inquiry in a holistic manner, looking for evidence of discrimination."); *Siam v. Potter*, No. C04-0129MHP, 2005 U.S. Dist. LEXIS 11893, at *39 (N.D. Cal. May 16, 2005) ("At the trial stage, the burden-shifting framework dissolves into a singular inquiry for the factfinding jury: whether plaintiff has shown, by a preponderance of the evidence, that defendant intentionally discriminated against plaintiff based on her sex and race/national origin.")

A jury on a discrimination claim based om disparate treatment does not consider evidence piecemeal, asking whether this act or conduct constitutes discriminatory intent and, if not, discard it. The jury takes the evidence as it comes in -- the testimony and documents – and considers whether the evidence *in toto* establishes the specific claim. While jurors may arise at their finding based on numerous factors, they are not given a list of specific evidence and asked to check whether this incident or that counts as unlawful discrimination. Where the district court's role is to serve as "gatekeeper," *Sony BMG Music Entm't v. Tenenbaum,* 672 F. Supp. 2d 217, 221 (D. Mass. 2009), the court erred in not considering whether evidence in the "aggregate" sufficed to allow a jury to return a verdict in favor for Farid on Counts I and II.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN COMPELLING FARID TO PRODUCE METADATA IN GRANTING DEFENDANTS' MOTION TO COMPEL.

Farid appeals the single issue in the district court's Order granting in part Defendant's Motion to Compel in which the district court ordered Farid to "provide, as promptly as is practical, the metadata related to document production, as agreed in the ESI Protocol." *Infra* 56 (Addendum). While Farid acknowledges that the district court's discovery order is reviewed under an abuse of discretion standard, this metadata ruling in the order is nonetheless reversible because it is plainly wrong and causes prejudice to Farid. *See Bonner v. Triple S Mgmt. Corp.*, 68 F.4th 677, 684 (1st Cir. 2023).

The ESI Protocol by which the parties agreed to produce metadata incorporated by reference Fed.R.Civ.P. 26(b). S. App. 13. Under Rule 26(b)1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1). As this Rule states, a discovery request under the Federal Rules by default now requires consideration of

47

"the parties resources" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Farid and Dartmouth are not on equal footing in their resources. Dartmouth is an Ivy League research institute and Farid is an individual. Farid informed Dartmouth nearly six months before the Motion on July 31, 2024 that he was producing his discovery without metadata. S. App. 128. One week later, he reminded Dartmouth (through counsel) that the "emails that make up 95% of the Plaintiff's response to Defendant's discovery requests have a single author [and] it would be unreasonably expensive, time-consuming, and burdensome for the Plaintiff to create load files for his production." *Id.* at 132. He told Dartmouth to identify any emails for which it requested metadata. *Id.* On January 10, 2025, before filing the Motion, Defendant took the deposition of Farid. App. 211.

The district court abused its discretion in ordering Farid to produce the metadata because it did not apply the factors enumerated under Rule 26(b)(1) and did not consider the parties' course of conduct prior to the Motion. That conduct includes Dartmouth's taking the deposition of Farid without the metadata prior to filing its Motion, which significantly undermines any purported need for the information. *See Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC,* No. 23-734, 2025 U.S. Dist. LEXIS 133319, at *16 (E.D. Pa. June 20, 2025) (considering Rule

48

26(b)(1) factors in analyzing and denying motion to compel metadata). As a result of the order, Farid will need to search for and re-produce tens of thousands of emails in native format despite Dartmouth already taking his deposition with the emails produced without the metadata and not moving to compel prior to the deposition. Accordingly, this Court can reverse the district order's concerning metadata under the abuse of discretion standard because the ruling was "plainly wrong and [will result] in substantial prejudice to [Farid]." *Bonner v. Triple S Mgmt. Corp.*, 68 F.4th 677, 684 (1st Cir. 2023).

## Conclusion

For the foregoing reasons, this Court should reverse the Sealed Order granting summary judgment on all counts of the Federal Complaint in favor of Dartmouth and reverse the Order partially granting the Motion to Compel ordering Farid to produce metadata.

RESPECTFULLY SUBMITTED,

PLAINTIFF-APPELLANT AMRO FARID
By His Attorney

/s/ Joseph Sulman

Joseph L. Sulman, BBO # 115200
Law Office of Joseph L. Sulman, Esq.
391 Totten Pond Road, Suite 402
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com

October 22, 2025

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 32(A)(7)(B)


I hereby certify that this document complies with the requirements under Local Rule 32(A)(7)(B) and has 10,011 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Addendum.

I also certify that this brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionate type spaced Courier New Font using Microsoft Word 365 and 12-point font.


/s/ Joseph L. Sulman
Joseph Sulman


October 22, 2025

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this document,
with the addendum, on counsel for Defendants-Appellants via the
Court's Electronic Filing System on October 22, 2025, and that
two paper copies will be served by First-Class Mail per
Fed.R.App.P 31(b) as required by the Court.

      /s/ Joseph L. Sulman
      Joseph Sulman

      October 22, 2025.

Case: 25-1734    Document: 00118358459    Page: 52    Date Filed: 06/23/2025    Entry ID: 6759833

**ADDENDUM**

**TABLE OF CONTENTS**

**Order (June 5, 2025)** ……………………………………………………**Add 2**

**Judgment** ………………………………………………………… **Add 6**

Add 1

Case 25-1724, Document 60, 08/22/2025, 3675983, Page 53 of 58   Case 1:23-cv-00426-SM   Document 84   Filed 06/20/2025   Entry ID: 6760833

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Amro Farid

    v.                                        Case No. 23-cv—426-SM

Trustees of Dartmouth College

## O R D E R

A status conference was held on June 4, 2025, to discuss and resolve outstanding discovery issues and to firm up pretrial plans.

Trial will remain as scheduled for now, subject to defendant filing a subsequent motion for limited discovery relief related to plaintiff's late document production and potential need for a brief continuance.

As discussed, the motion to extend time to disclose experts (doc. no. 20) is denied as plaintiff did not retain an expert within the time prescribed, nor within the extension requested, nor as of this date, and, plaintiff represents that the expert previously anticipated is no longer necessary.

The motion to compel under Federal Rule of Civil Procedure 37 (doc. no. 25) is granted in part and denied in part. After the motion was filed, plaintiff produced a privilege log, and defendant's counsel will consider and pursue challenges if the need arises. While plaintiff waives privilege for any document that is not identified in the privilege log, the court will not

Add 2

impose a general waiver penalty at this time.  By noon on Monday, June 9, plaintiff shall execute and provide defendant's counsel with signed medical release authorizations for any care that he has received related to his damages claims, including pre-injury care that might relate to similar preexisting conditions.  Plaintiff shall also provide, as promptly as is practical, the metadata related to document production, as agreed in the ESI Protocol.

The motion to extend the general discovery period to June 30, 2025 (doc. no. 26) is denied.  However, plaintiff may take the deposition of Associate Dean of Academics and Student Affairs Holly Wilkinson at a time convenient to her, preferably within sixty days, and limited to two hours unless an extended time is agreed to by defense counsel.  Plaintiff no longer wishes to take the deposition of Elizabeth Smith, and his request to identify a different additional deponent at this late date is denied.

The motion to amend response to request for admissions (doc. no. 35) is denied.  Plaintiff does not dispute that he failed to respond to the request for admissions within the time allowed under Rule 36(a)(3), which results in default admissions.  It appears that the dispute between the parties with respect to the default admissions is minor – not related to whether the article in question was the substantially completed

2

Add 3

work of plaintiff and his collaborators (in a final or near final stage) but whether he "authorized it for publication." The relevance of the evidence is that a complete or nearly complete article included a named student author and a published version of the same article did not.  At trial, that discrepancy can be explained, but the defaulted admission establishes a comparative version attributable to plaintiff.  Allowing an amendment would not "promote the presentation of the merits of the action" and the court is not persuaded that disallowing the amendment "would prejudice [plaintiff] in maintaining . . . the action on the merits."  Foss v. Marvic Inc., 994 F.3d 57, 63 (1st Cir. 2021).

The motion to compel production (doc. no. 41) is denied without prejudice.  Plaintiff apparently produced documents on May 21, 2025, but defense counsel have not yet determined whether compliance has been achieved.

The motion for sanctions (doc. no. 44) is denied.  However, as discussed, plaintiff's counsel shall, as he agreed to do, produce Inas Khayal for a deposition (related to claimed damages) in July, 2025.  Should the parties be unable to agree upon a specific time and place, the court will schedule the deposition at a required time and place.

Defendant's success on the discovery motions presents a close question in these circumstances whether to award fees

3

Add 4

pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), which the court takes under advisement to be resolved at the conclusion of the case.

## Conclusion

For these reasons, plaintiff's motion to extend time to disclose experts (doc. no. 20) is denied.  Defendant's motion to compel (doc. no. 25) is granted in part, and plaintiff shall provide signed authorizations to defendant's counsel by **noon on Monday, June 9, 2025**.  Plaintiff's motion to extend discovery deadlines (doc. no. 26) is denied except as provided in this order.  Plaintiff's motion to amend (doc. no. 35) is denied. Defendant's motion to compel production (doc. no. 41) is denied without prejudice as provided in this order.  Defendant's motion for sanctions (doc. no. 44) is denied, except as provided in this order.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 5, 2025

cc:  Counsel of Record

4

Add 5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Amro Farid

    v.                                        Case No. 23-cv-426-SM

Trustees of Dartmouth College

JUDGMENT

Judgment is hereby entered in accordance with the Order by Judge Steven J. McAuliffe dated July 2, 2025.

The prevailing party may recover costs consistent with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

By the Court:

Tracy A. Uhrin
Clerk of Court

Date: July 2, 2025

cc:  Counsel of Record

Add 6